17-05-24 People of the State of Illinois, Appalachia, by Thomas Rado, v. Cody Smith, McCollum, and Maggie Doolittle. Counsel? Mr. Smith. Good morning, Your Honors. My name is Matt Doolittle. I represent the defendant, Ms. Cosme McCollum, Cody Smith. Mr. Smith is challenging the trial court's conviction of him for murder for hire. That was a conviction that happened after a bench trial in Dr. Julius Orphan, in this county of LaSalle. He is challenging... I was also a trial counsel, I should mention that. He is challenging his conviction on two grounds. The first is his position is that the introduction of other crimes evidence, specifically a confession to a predatory criminal sexual assault charge, and a video confession of the elements of that offense, should not have been introduced in the trial. And the second claim he has is that the state failed to prove him guilty beyond reasonable doubt. Now, in both of these circumstances, the appellant has a difficult burden. In regard to the first element, the first claim, the question is, was there an abuse of discretion? And we believe under these circumstances, there was an abuse of discretion. So, just as a little bit of background, I'm sure you all already know this, but my client was in custody on a predatory criminal sexual assault charge when he allegedly, or was accused of making a... trying to do a three-person murder for hire. And eventually, he was charged, and the state attempted to introduce the confession that he had in relation to the predatory criminal sexual assault of the child. And the trial court allowed that to come in. And the trial court claimed that it went to establish motive. And the problem that we have with establishing motive is that under these circumstances, it doesn't even really serve that function. Well, let me ask you, this is a bench trial, right? That's right. So, let's suppose the judge would have... and the judge is presumed to follow the law, right? Correct. So, let's suppose the judge grants the motion to keep that confession out. Correct. The judge still knows about it. True. Okay? So, it's like... and so... I mean, it seems... if you're saying, gee, it would unduly influence a jury, that's one thing, but when you've got a judge ruling on it, the judge already knows about it, so you can't unring that bell, and we'd have to presume that the judge followed the law, ergo, what's the prejudice? Let's look at the facts here, too, to follow up on that question. Is that that judge was asked to view that videotape, am I correct? That's right. And by whom? By the state, and I believe the public defender I was not representing. Okay. So, okay. So, the public defender... so, a joint request to view and do redactment, et cetera, on the tape, correct? Correct. And this was the trial judge, correct? Correct. And did the public defender move for a recusal of that judge when bench trial was requested and jury was waived? No. Well, wouldn't it logically be your argument that that would be a problem? I mean, you're making an issue now that it's a problem that the judge, you know, admitted it before herself. Sure. Okay. So, I guess what I'm saying, if you're saying that that was prejudicial and influenced the judge's decision in finding a fact, okay, in conclusions of law, it would appear to me that a recusal, if that was a concern, would have been in order. Am I wrong? I don't think there would have been a legal basis when she's already made a ruling on the case to be able to get her to recuse. But the problem here is not that this was set for a jury trial when she made this decision. So, we have this idea that we should presume the judge is making the right choices and only allowing in relevant types of evidence. But the problem you have is she made that decision when there was still a jury. So, it's different that it's set for bench trial. I'm going to watch it. I'm going to take it for what it's worth. She made the decision when this case was set for jury. So what? I mean, who waived the jury? We waived the jury after the video was allowed to be introduced. Okay. Then, by waiving the jury, didn't you just submarine your own argument of this video is prejudicial to a jury? No, because I believe there's a logical fallacy of saying, well, we're going to presume the judge is right, but she allowed it to come in in front of the jury. What your argument is is that she ruled on invincibility. Correct. When it was a jury trial. She told us that she thought it was relevant. That it was relevant, admissible, and could be considered. Correct. Okay. So now, I don't think we have the history. We presume the judge is right. We know what the judge did. And under these circumstances, I can say this. I was the trial counsel that made that decision. We waived it because of the inflammatory nature of that video coming in. I thought you said you weren't trial counsel. I was trial counsel about halfway through. This, the hearing on the- Okay, that's fine. I just wanted to make sure I hadn't misheard. So you said there would be no permissible recusal? I don't believe that there would. I mean, I could be wrong. But my assessment would be that she had already made a decision on the case. It's part of the nature of her, you know, she's having to do it. And I don't think that would be a valid basis to be able to say how you would need to get out of the case. And quite frankly, it certainly would make more sense to try to recuse her under the circumstances in which she denied it from being introduced into evidence. Because then you can say, okay, you've seen things that you shouldn't have otherwise seen. You want to finish on it. Her ruling was this was allowed to come in. Okay, but your argument is it's inflammatory. Right. And we're presumed that when considering all the evidence, when ruling on this case, the trial judge followed the law. So have you got, so, and you would agree, gee, why would this guy go out and try to hire somebody to kill three people? Well, that's not normal behavior. Well, the reason is, is because he sexually assaulted this little girl and was trying to get rid of witnesses so he doesn't get convicted of that. That's pretty much noted. Have you considered this evidence for anything other than motive, as she was required to do by law? Well, I would argue that the trial judge never should have considered this for motive. The motive was established through testimony that was not inflammatory. The defense wouldn't object and didn't object to the state introducing the fact that the defendant was charged with predatory criminal sexual assault. Officer Martin was the first one to testify. He told the trial court who the witnesses were. He told them all, told us all about the case. The problem with the video is not that he was charged with the offense. It's that it goes into explicit and sickening detail about an erection, penetration, ejaculation in a port-a-potty with a two-year-old. And the idea that that has any relevance to the underlying criminal effect of criminal cases, if it does have any relevance, then we can get to the next step, where the prejudicial effects. They identify witnesses. Would an innocent person have a motive to go out and kill people that were supposedly witness to a crime that he wasn't involved in? I believe that, yes. I mean, I think that if you're – I don't think there's any difference between being involved in a crime that you had to confess to and a crime that you weren't – that you didn't commit. I think under those circumstances, people may want to have witnesses that would testify against them to be killed. I mean, I think it might be – it might have even more of an inclination to kill somebody if you believe they're testifying falsely. Was there some credibility issues with the confidential – it's not confidential informant, but the jailhouse snitch? Oh, yeah. And so there were some issues whether he was trying to benefit himself by incriminating your client? Correct. And I think that those issues largely come up with the question – in the question of should the trial court have found him guilty. And in that case, in that situation, we once again have a very tough burden. It is looking at it in the light most favorable to the state with a rational prior effect have found the individual to be – could they have found the individual to be guilty. That's a tough burden. I didn't mean to switch your focus with that question. I'm having a little trouble understanding the issue, the first issue as you framed it. Are you asking us to find the judge erroneously allowed the videotape to come in and ending the issue there? Or are you saying because she allowed it in, whether it was right or wrong, he was somewhat coerced into giving up his jury trial? I'm confused about the scope of the issue. So I think where we're at is the judge allowed this way too prejudicial video to come in compared to the appropriate value. Under those circumstances, if the defendant then has to waive, that's what the inquiry asks. And the question becomes would it be practical to have a jury. I think that's different than can you have a jury. Yes, you can have a jury if you found guilty, but the question becomes you have the – is it practical to have a jury? You have the right to a jury trial, and if you're being hamstrung and being forced to do a bench trial because of the pretrial admission of prejudicial evidence, then under those circumstances, what else can you do? You still want to be found not guilty, and if the act of raping a two-year-old is going to be introduced to the jury in a separate case, then you're in a situation where how can you do anything but wait? So our claim is that since you don't need to get to the point where is there harmless air or any of those questions, because as soon as that decision was made, he didn't have a realistic opportunity to be able to have a fair and impartial jury. Well, now wait a minute. Okay, so what you want to do is argue to a jury that this jailhouse snitch is lying, this never happened, and he's just trying to help himself. And you want to bar the state from using the evidence that says you don't have to take his word for it, here's the video. And you want to be able to argue that the jailhouse snitch, he's one of these guys, they're unreliable, he's trying to make a deal with the state, and then without the state being allowed to show that, well, you don't have to believe the snitch, here it is on tape. And so you want to say, well, who are you going to believe, me or your lying eyes to the jury? And it seems to me you want to have it both ways, and that's not the way it works. There was nothing unfair. Explain to me what's unfair about them releasing this evidence that helps corroborate the credibility of the jailhouse snitch. If I understand your argument, it's because it was so prejudicial. It counterbalanced any relevant evidence. That is correct, yes, and I don't believe that the introduction, if you will go watch the video, my client's confession to these details, it doesn't relate to challenging the credibility of the jailhouse. Okay, it's not charged with that. The trial is not about that crime. Correct. It's basically, to put it very simply. Correct. Okay, it's other crimes' evidence, correct? Correct. And it's being introduced to show a motive for the crime that he's on trial for, correct? Yes. Okay. You're saying it would be more than sufficient and not prejudicial, and would you, probably would, but the objection would be overruled that what about that prior crime could have been introduced in your mind that would satisfy motive? And I think all you have to do there is look at Officer Martin's testimony, the first officer that was called, because really quickly he tells you everything that you need to know about the prior crime. Charges predatory criminal sexual assault. Victim was a two-year-old. These are the three witnesses. They're the same three witnesses that he is alleged to have tried to commit in. And so that would be sufficient in your mind, okay, you're saying, to a finder of fact to believe that could be or could not be a motive for this contract killing? For sure. I guess the actual physical act of what happened doesn't add anything to that. It doesn't add to what he was. Was there a plea of guilty to that charge at the time of the trial? After this he pled guilty. No, at the time of the trial. No, at the time of the trial he had not yet pled guilty to. So in the big picture you're saying that the finder of fact, if it were a jury, that was your argument, that they would be possibly implicitly convicting on the first one if they convicted on the second. Yes, and they wouldn't be looking at the second issue fairly because of what they heard about what he did in the first case. And I guess all that really comes down to this. Which is the prejudicial value of the tape outweighs its probative value. That's exactly what I was going to say. The prejudicial value is way out there and the probative value was satisfying with other things that were already introduced. Okay, do you want to switch real quick to your second area? Sure, yes. And I think I've already gone over what the burden here is. But what I want to focus on here is if you look at the entirety of the case, it appears to be a very strong case of obscenity. Secret recordings, confessions, those types of things. But what we're talking about here is an entrapment defense. So if you follow the pattern of how you analyze an entrapment defense case, the first question would be at what point was he entrapped. That's right. Thank you. Where the state and the defense come into the first set of law defense, which is can you have an individual that was an agent for the state later become an agent for the state and have them ratify everything. Well, let's suppose, for the sake of argument, let's just presume that this snitch was an agent of the state. Well, I guess then you get into the Miranda stuff. So how was your client entrapped? Sure. So if you assume that he was an agent for the state, then the inquiry becomes did the defendant show slight evidence of entrapment. And if the defendant did show slight evidence of entrapment under those set of circumstances, the state has to prove that he was not entrapped beyond a reasonable doubt. Well, entrapment is not to give evidence, but entrapment is to where the law enforcement gets you, basically coaches you into committing a crime that you wouldn't have otherwise committed but for their actions. So the inquiry stops being this entirety of all these recordings, and it gets narrowed down to what happened at the beginning of this case when we're alleging that he was entrapped. Clearly there's slight evidence because he testified. Slight is a really low order. He testified. And what evidence is that? He testified that he was entrapped. Well, that's a conclusion. What evidence, what facts support the conclusion that he was entrapped? Sure. He claimed that the idea which made him the mind of Darren Ferris, Darren Ferris is, I think, a 15-time convicted felon, been in a joint seven times, numerous crimes of dishonesty, did the same procedure in a previous case where he'd already been in prison, where he wrote a letter to the state's attorney saying, hey, I'll give you this information if you get me out of prison, and then didn't go to prison even though he'd been to prison. So he'd already filed this procedure, plus my client was in there for a year, had no, there's no history. They admitted that there's nothing in the record that shows he was trying to do this for that whole year. He's a slow kid. He's mentally retarded. He's homeless. All of these things, plus his testimony that Darren Ferris was the one that came up with this idea, all of those things combined create, certainly create a slight difference. The problem is all of the rest of the case, the state has shown that he was guilty of the underlying offense, but that's not relevant for whether or not he was entrapped. All of the later confessions and all the things that make him, that go on later, they are just for the underlying offense that he committed. But in terms of whether or not he was entrapped, if you go back to the beginning of the case, you've got a he said, she said between a slow kid who's been in jail for a year and a multi-time convicted felon who's quite frankly counting women out of money while in the jail. It's his word versus their word. That's all that you got. So if you go to the beginning of the case, the state didn't prove beyond a reasonable doubt by any set of facts that he wasn't entrapped. If Darren Burris was an agent present. And I think by trying to get this run out, any other questions? You'll have some rebuttal time. Thank you, Mr. Mueller. Mr. Arado. Thank you, Your Honor. Thank you, Your Court. I'm on your case, counsel. This case is, essentially there's really three arguments I think that are going to be made. The first is the trial judge erred in granting the motion to eliminate the state that introduced this video. Then there's this kind of argument that his jury waiver was essentially invalid because the judge allowed his evidence. There's no case for it at all, for that proposition. I mean, once you waive the jury, when you have pulled off what the evidence is, that's a valid waiver in the jury. There's no cases, except perhaps in the context of an ineffective system of counsel, that says you get a do-over because the trial judge made a ruling before the jury waiver and then definitively attacked the decision to waive the jury. So that is more or less dispositive. And how does those ineffective accounts, ineffectiveness of counsel cases come out when it was trial strategy? Was there any prevailing on that argument? No, not generally. I just wanted to show credit as well. And obviously we didn't, I'm going to have to read it because it's the second case. The only case that, the second, in a sense, we're unmarking the proposition that the first jury waiver does not carry over on a retrial. Now that's nothing new there. As far as the, and then of course, the third argument is the entrapment. So I'll turn back to the first problem with whether or not the trial judge erred in rationality. First, the trial judge would have to be found to have been arbitrary, unreasonably, and no other person, no reasonable person would have been able to trial judge. That's the burden that the defendants overcome. And that would be regardless of the venue of the fact finder, either the judge or the jury. Correct. The judge here reviewed the evidence, reviewed the video, asked for certain parts to be redacted out, which was done, and then made a ruling that this was not more judicial than appropriate. Now, what was this? What was what was the evidence that was not redacted in this video? The judge referred to sex thoughts of the defendants and certain thoughts about the victims. OK, but there was some very graphic detail of what was left in, wasn't there? There was some. You probably don't even want to read it out loud, do you? I mean, it was rather graphic. Oh, OK. Well, it's pretty explicit, isn't it? And how does it go to motive? Oh, it goes to motive because it shows that the defendant was in fact aware of his guilt and that he had motive to eliminate these witnesses. Well, the opposing counsel said that you have testimony from an officer identifying these three alleged victims of this conspiracy to solicit murder or hire. Research that's not in itself sufficient because that only shows that the defendant had a charge against him and had witnesses on the scene. By showing that he acknowledged his guilt gives him the motive to further enhances the evidence that he had the motive to kill. Really? Well, you're charged and you're a witness and you know who the witnesses are. Everything goes away if they're not there. Well, this goes back to Justice Schmitt's question about, well, what if he's innocent? And counsel was arguing that, well, an innocent person would still want to kill them because they're falsely accusing them. I mean, that's not the case at all. Let's just assume, for the sake of this question, that the judge erred in allowing this. So then it's just a legal question of so what? Because what's the prejudice? Don't you have to – because this was a bench trial, don't you have to show that – what evidence is there that the judge was so inflamed that she disregarded the law and considered that evidence for an improper purpose? Correct. I mean, that is really the underlying issue. Even if you had – she allowed this. There's no evidence she considers that this evidence were of that motive. As we said in the Nash case, that the problem of overdue prejudice or inflating of the entire fact is assuaged by having a bench trial. It's presumed that the trial judge added this problem to the law and considered the evidence for only the purpose in which it was offered. In this case, it was offered for evidence. And the trial judge, believe it or not, in the case, never said that she considered anything else. And in the real world, if you tell a jury that, by the way, this defendant, his motive was he was charged with sexually assaulting a two-year-old, it's pretty prejudicial stuff. But it's necessary to show motive for wanting to kill him. So at the end of the day, is this evidence allowed that much more prejudicial than telling a jury, this guy rapes two-year-olds, or he's charged with raping a two-year-old? And the people that he's charged with wanting to kill are the victim and witnesses. I have a question. Can you answer one? I think that the evidence of the video establishes the defendant's state of mind more so than simply saying that the evidence is that he's charged with raping his witnesses. Are you ready? Along the same thought. Why don't we measure the trial judge's ruling based on the state of events? When she was asked to exclude this evidence, there was a jury demand. And she had to consider whether the videotape would unduly prejudice the trier effect that existed at that time. Why are we measuring whether she should have considered whether it would prejudice her if she was trying the case? I'm just a little bit confused about what does a trial court consider when measuring prejudice? Isn't it the current state of events? Whether the relevance outweighs the prejudice, and the prejudice would be its impact on a jury. It's true. There is a distinction between evidence that's introduced at a jury trial versus a bench trial. The trial judge makes a ruling regarding it wouldn't have prejudiced or unduly prejudiced the jury. Why would unduly prejudice the individual judge? Well, if I understand the drift of the arguments here, you're saying, and Justice Schmidt is saying, it was a trial in front of a judge, there couldn't actually be prejudice. But is that what we look at? It's not impossible to say that evidence could influence a judge. But there has to be positive evidence on the record to say the judge was unduly considering it. The presumption always is that the judge only considers the evidence. I know, I know. But I think that's putting the cart on the horse after somebody's stable. I just see the issue very differently. In this situation, the court did not, on the flip side of the argument, the defendant hadn't pled guilty yet. And so the court is confronted with, how do we get motive in? Because so I can see both sides of this coin. Well, let me ask you, this ruling, whenever it was made, was interlocutory. And the day before a jury trial or in the middle of a jury trial before it comes on, the defendant could have asked her to revisit that and maybe change her mind about doing that. So this order, when it was entered, was an interlocutory order and subject to change. And you could easily have asked the judge again before the jury trial to reconsider and not have that evidence introduced at all. But it didn't. But now you have a change in the fact finder at that time. Right? All right. I'm sorry. Go ahead and answer that. Just a yes or no answer. Did you argue for it, Richard? No? No. I believe the general. Good. I was basically talking to my colleague. So go ahead. No, that's fine. Yeah, I just say that there's, at that time frame, there was a different, I mean, to ask the judge who was already viewed and ruled on the admissibility of this evidence before a jury to then ask. It's like a futile motion. At that point, I mean, realistically, oh, please revisit your earlier, you know, review and impressions that may or may not have been informed from watching that videotape when you decide this case. That's basically what you're saying. I understand what you're talking about, Your Honor. But nonetheless, it is a miscontroversial order, which can be asked to be reconsidered at any time. Well, yes, but normally it's asked to be reconsidered before it's given to the jury. True. Okay. That's before any impressions could be formed that would potentially prejudice the jury in deciding the ultimate fact. True. Oh, that's all I was trying to point out. Well, we have a valid jury record, but it does not cite any case that suggests that the jury was not valid. In the Venice trial, the judge only considered the evidence for the manner in which it was presented. Turning to the reasonable doubt, of course, the evidence is likely to be able to do with the people. Anyone should fire it back to the final defendant guilty. As far as the entrapment, Ferris was not the agent of the state at the time he had the initial contact with the time. We know this not only from Ferris' testimony, but from the phone call that was made between the defendant and his mother on April 6th. It wasn't until April 8th that Ferris met with Detective Martin, who had been a murder-in-probable potential for somebody asking for murder witnesses. So, Tony Smith's comments to his mother about, oh, well, I don't think the witnesses are going to show up, and there's somebody out there who's mad or has an issue, and if the witnesses don't show up, this is all over, I mean, that establishes that this time frame for the point in which defendants already made the agreement or the solicitation of Ferris, and leaves Ferris as not a government agent. Furthermore... Did he ever become a government agent? At what point, in your mind? At the point in which he agreed to the overhears with Detective Martin, and he got a criminal judge for the overhears, etc., etc., but at that point, the agreement had already been, the solicitation had already been completed, and this was getting optimized to confirm the, essentially, the agreement between the... So, basic law, you can only become an agent when the principal is aware of your actions on his or her behalf. Correct. Black-letter law. And there's no... In his reply brief, there's a reference to civil cases in which there's an affirmation of the agent's actions after the fact, but that does not apply. There's no criminal cases that say that. It's called ratification. It's called ratification. I think ratification, yes. Two minutes. Therefore, there was no... Judge Aculia made a specific finding that... She basically defined the defendant credible that his testimony was refuted by all the other evidence in the case. I also point out that the defendant's claims specifically about wanting to alert the superintendent about Ferris' solicitation of him was completely refuted because they couldn't testify to that. He never received any notice that the defendant had submitted any request slips about any of that to him. The evidence otherwise is set forth in the brief about why this was... It's reading all the evidence, all the elements of solicitation of your honor. And therefore, we stand on that. That's one of the questions we ask this court to answer. Thank you. Thank you. Mr. Mueller, Senator Butler. Thank you, Your Honor. Just to begin real quickly, I do want to point out that in regards to the motions to reconsider the interlocutory nature of the first issue, it was objected to every time it was introduced, even when it was actually at the bench trial. I object because I was involved there. Every time it came up, I objected to the fact that it should have been referred to as shown. It was overruled every single time. Which you would have done if you were in front of a jury. Exactly. That's correct. So ultimately what it comes down to is, and this is People v. Droppers, which we said they would apply, we believe that it's a right to an unbiased jury was violated by the admission of these extraneous matters. So the question becomes, would the introduction of other crimes evidence create an unbiased jury? And at that point, it did. Well, you see, as we keep saying, there was no jury. There was going to be, though, and you have the right to an unbiased jury as a constitutional right. So the trial court's original ruling takes away, or if you agree with me, and the trial court's original ruling takes away the ability for the defendants to be able to have an unbiased jury, then you have a constitutional right. Normally that's corrected after a verdict is entered in your own appeal on that verdict. I agree with what you're trying to do. Yeah, but that's if you went to jury. And I guess the question becomes, do you have to throw yourself to the wolves when you've got a legitimate issue you believe can be presented, and do you have to get yourself convicted to come up here? Let me ask you, you talked about the prejudice. Well, how do you think 12 tried and true here in LaSalle County are going to just react? If you just tell them, this guy is charged with raping a 2-year-old, and the people he's charged with trying to get killed were the victim and a couple of witnesses. How do you think the jury's going to react to that? The jury's going to hate that. There's no doubt about it. I mean, there's already a prejudicial effect. You've got to establish motive. And if under those circumstances, the balancing test of prejudicial versus appropriate, if you're limiting it to it's just this charge, well, then it's probably a little more appropriate. The problem is the penetration, the ejaculation, the things that I think you don't want people reading in there aloud. That's the problem. Well, except for opposing counsel. There you go. And I do also want to, since I think I'm running out of time, just as you mentioned black-letter law. And here what I want to point out is there is black-letter law on ratification. The appellate courts use the term government agent. We have to presume that these appellate courts are using legal terms the way that legal terms are supposed to be used. That's quite an assumption. But if you're calling someone an agent, we're talking about the rules of agency. And if you've got ratification, if someone is not my agent, goes out and does a bunch of things that I didn't tell them to do, and then they come to me and say, I did all the, you know, here, I've got this deal set up for you. You've ratified their actions. And what I'm saying here is if you believe the state's view of ratification and agency, it would create a little bit of a preposterous result, which would be the government can, a person could try to get the benefit from the government by setting someone up. Do all that they can to try to entrap someone. Then go to the government. The government can then give them the benefit that they want it to without having any fear of the fact of what they did in order to be able to get that benefit. And the law of agency says, no, you've ratified what that person does. You're stuck with what that person had done. And under these circumstances, I agree, there's no case law in this. I don't think it's an issue of first impression. It's not an issue of first impression of civility. It's an issue of first impression of the criminal. But here, it's never been addressed before. I think you've got to go with the rules of agency. And if you go with those rules, they clearly have to adopt everything that he did. So the idea that, oh, he became an agent when he agreed to sign up, he may have become an agent, but they've ratified everything he did beforehand. Under those circumstances, if the government affairs set up my slightly mentally retarded client in order to be able to get benefit, they're stuck with that. They have ratified it. That was their actions as soon as they gave him the benefit and they decided to do it. And then that means what you were giving the argument of they have to now prove beyond reasonable doubt. Yes. And the relevant inquiry stops being the entirety of all this later stuff where he's already been trapped and shrinks down to this one little area, which is before when was he entrapped and what we have to prove that he was not entrapped versus entrapped. And there, that's where it becomes he said, she said, it's a lot of penalties, a lot of premises, versus my client's work. That's a tough thing to be able to prove. And I'll also point out that the government in this case, and you can read in the transcripts, they did nothing to investigate what actually happened between Ferris and Smith before the time when they signed him up. They didn't go back and look through jail recordings to see if he was really being followed around. They didn't try to see if there was any type of recording, any phone calls from Ferris before this ever happened. They didn't go through all that stuff. Because they're basically saying, well, we're going to close our eyes, and if you do something bad, we don't care about it. That creates a heck of a lot of risk for the governments to play fast and loose with the rules. That's why ratification is something that has to apply in both types of agencies, whether it's a criminal agency or a civil agency, ratification has to apply. And I still have to go back to the original question I asked in the beginning. What is the first issue? Because there's a lot of strategy that goes into criminal trials on the part of the prosecution and the part of the defense. Perhaps it was prosecutorial overkill to want to introduce this videotape. What is the issue you want us to decide? I want you to decide if the trial court erred in that original decision. End it there? I think it's really three parts. I'm sorry if I haven't been clear. Well, I look at the heading in your brief, and it's only trial court's ruling was erroneous. I look at the discussion, and you're finessing this, he didn't voluntarily waive his right to a jury trial. What I'm getting at is once the trial court made her ruling, you had a couple of options that you didn't take. You could have had to stipulate a bench trial, which often happens when a motion to suppress in a drug case doesn't go your way. But you didn't. You didn't say, okay, by God, we're going to stipulate or plead guilty and we'll take this up to the appellate court. Instead, you waived jury. And aren't you to be held to the consequences of that decision? A couple of things. Stipulate a bench trial would be if we were saying, it's most common a motion to suppress where if you don't win, then your client suffers. Okay, so strike that analogy. If you want us to look at the prejudice that this ruling would have had on a jury, why shouldn't we hold you to the decision that you made to waive the jury and evaluate it based on the record that you developed? I believe the error is there either way. We've got to say it, and I'm sorry I've said this before, but we've got this presumption that the trial judge is only going to consider relevant evidence. Well, she already introduced what I believe is irrelevant evidence. So I don't think you can jump to conclusions. I'm focusing on your decision. Do you think that by waiving the jury, you have invalidated your argument? No, because the trial judge's error still exists. The trial judge still made the decision before. Okay, you've answered my question. All right. Thank you. Thank you. Mr. Rado, likewise. We'll take this matter under advisement. Written disposition will be issued.